# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN E. RANSOM, <br> CDCR #H-71641 <br><br> Plaintiff, <br><br> vs. <br><br> DR. GRAY; DR. SANTIAGO; <br> JOHN DOES, <br><br> Defendants. | Civil No.   07-2340 IEG (WMc) <br><br> **ORDER:** <br><br> **(1) DISMISSING DEFENDANTS GRAY AND DOES PURSUANT TO FED.R.CIV.P. 4(m);** <br><br> **(2) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. No. 46]; AND** <br><br> **(3) DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [Doc. No. 49]** |

Currently before the Court is a Motion for Summary Judgment filed by Defendant Santiago [Doc. No. 46] pursuant to FED.R.CIV.P. 56 and Plaintiff's Cross-Motion for Summary Judgment [Doc No. 49].

## I.
### PROCEDURAL HISTORY

This matter was initially filed by Plaintiff in the Eastern District of California. On December 11, 2007, United States Magistrate Judge Dennis Beck found that the claims alleged

in Plaintiff's Complaint arose in San Diego and thus, transferred this matter to the Southern District of California. On February 26, 2008, this Court granted Plaintiff's Motion to Proceed *in forma pauperis* ("IFP") and found that Plaintiff's Complaint survived the sua sponte screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Therefore, a summons on the Amended Complaint was issued and the Court directed the U.S. Marshal to effect service of Plaintiff's Complaint on his behalf pursuant to FED.R.CIV.P. 4(c)(3) and 28 U.S.C. § 1915(d) [Doc. No. 4]. On June 23, 2008 Defendant Santiago filed his Answer [Doc. No. 8].[1]

On March 1, 2010, Defendant Santiago filed his Motion for Summary Judgment pursuant to FED.R.CIV.P. 56 [Doc. No. 46]. Plaintiff filed his own Motion for Summary Judgment pursuant to FED.R.CIV.P. 56 on March 11, 2010 [Doc. No. 49]. Plaintiff later filed a "Memorandum of Facts and Contentions of Law" that the Court construes as his Opposition to Defendant's Motion [Doc. No. 51]. Defendant Santiago filed his Opposition to Plaintiff's Motion on April 13, 2010 [Doc. No. 58]. The Court has advised Plaintiff of his rights and obligations to oppose Defendants' Motion pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc)[2] [Doc. No. 45].

## II.

### PROPER PARTIES

As an initial matter, the Court notes that Plaintiff has named Dr. Gray and John Does as Defendants in this matter. However, a review of the Court's docket indicates that Plaintiff has not effected service upon Dr. Gray nor has he identified or served any of the Doe Defendants. Because Plaintiff has failed to effect service of the summons and Complaint upon these purported Defendants, the Court has no personal jurisdiction over them and they are not

---

[1] While this case was randomly referred upon filing to the Honorable William McCurine, United States Magistrate Judge, for disposition pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that a Report and Recommendation regarding the disposition of the current pending Motions [Doc Nos. 46, 49] is unnecessary. *See* S. D. CAL. CIVLR 72.3(a) (assigning "[a]ll of the District's civil § 1983 prisoner caseload" to the District's magistrate judges for disposition either upon consent of all parties, or in absence of unanimous written consent, "upon submission of proposed findings and recommendations to the district judge, unless the district judge orders otherwise.").

[2] *Klingele* and *Rand* together require the district court "'as a bare minimum, [to provide a pro se prisoner] with fair notice of the requirements of the summary judgment rule.'" *Klingele*, 849 F.2d at 411 (quoting *Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C. Cir. 1968)).

considered parties to this action. *See* FED.R.CIV.P. 4(m); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("In the absence of service of process (or waiver of service by the defendant)," under FED.R.CIV.P. 4, "a court ordinarily may not exercise power over a party the complaint names as a defendant." ); *see also Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a ... court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").

Thus, Court DISMISSES Defendants Gray and John Does from this action for insufficient service and lack of personal jurisdiction. *See* FED.R.CIV.P. 4(m); *Murphy Bros.*, 526 U.S. at 350; *Omni Capital*, 484 U.S. at 104.

### III.

### PLAINTIFF'S CLAIMS

On October 6, 1996, while Plaintiff was housed at the Richard J. Donovan Correctional Facility ("Donovan"), he took "the standard mandatory annual tuberculosis (T.B.) skin test." (Compl. at 8.) Because there was "no swelling or discoloration of the tested area," the result of the test was negative. (*Id.*) Three days later, "Medical Clinician Defendant John Doe #1 came to Plaintiff's cell" and diagnosed the test as positive for TB exposure. (*Id.*) Plaintiff asked John Doe #1 to re-evaluate the diagnosis because Plaintiff believed the result to be negative. (*Id.*) This request was rejected. (*Id.*)

On October 29, 1996, Plaintiff was taken to Dr. Gray for an examination and to begin a "T.B. exposure treatment plan." (*Id.* at 9.) Plaintiff explained to Dr. Gray that he had been misdiagnosed but Dr. Gray declined to retest Plaintiff while also informing Plaintiff that Plaintiff "was not qualified to challenge a Medical Clinician's tests readings." (*Id.*) Dr. Gray placed Plaintiff on a "six (6) month regime of Isoniazid (INH) and Pyridoxine (Vit. B6) for treatment of T.B. exposure." (*Id.*) Plaintiff was to take this medication twice daily for six months. (*Id.*)

As a result of taking this medication, Plaintiff became "extremely ill" causing "severe migraines, nausea, dizzy spells, stomach cramps and vomiting." (*Id.*) Two and a half months later, on December 11, 1996, Plaintiff informed Dr. Gray of these issues he was having and asked to stop taking these medications so that he could be retested for TB exposure. (*Id.* at 10.)

Dr. Gray refused and told Plaintiff that his reactions to the medication were "typical reactions to INH." (*Id.*) Moreover, if Plaintiff stopped taking this medication, Dr. Gray informed him that he would have to restart the regimen all over again for the next six months. (*Id.*) Plaintiff allege that he "reluctantly continued to take the medication as prescribed" which caused him to continue to suffer from the same symptoms. (*Id.*)

Plaintiff was later transferred to Calipatria State prison ("CAL") where he was seen by Dr. Santiago on January 9, 1997. (*Id.*) Plaintiff informed Dr. Santiago that he was "misdiagnosed and that he needed to be retested and taken of this medication." (*Id.* at 11.) Plaintiff also informed Dr. Santiago that the medication "was making him extremely ill, causing severe migraines, nausea, dizzy spells, stomach cramps and vomiting." (*Id.*) Dr. Santiago "refused Plaintiff's plead" and informed him that it was against "CDC policy to retest prisoners with positive test readings." (*Id.*) Thus, Dr. Santiago ordered Plaintiff to continue his medication and told him that his symptoms were a "typical reaction to INH." (*Id.*) On May 15, 1997, Plaintiff completed his six month treatment. (*Id.*)

On April 20, 2006, Plaintiff had a liver biopsy which "indicated that the 1996-1997 INH treatments had damaged Plaintiff's liver." (*Id.* at 11-12.) Plaintiff was retested for TB exposure on April 2, 2007 and the test results came back negative "indicating that Plaintiff has never been exposed to T.B." (*Id.* at 12.)

## IV.

### MOTIONS FOR SUMMARY JUDGMENT PER FED. R. CIV. P. 56

Plaintiff seeks summary judgment on the ground that "Defendants wrongfully subjected Plaintiff to a six (6) month treatment" with medication for a "tuberculosis exposure Plaintiff had never been exposed to, which has caused Plaintiff severe side effects, pain and suffering in violation of the Eighth Amendment." (Pl.'s Mot at 1-2.) Defendant Santiago seeks summary judgment on the grounds that: (1) Plaintiff's claims are barred by the applicable statute of limitations; (2) there are no genuine issues of material facts to support Plaintiff's Eighth Amendment deliberate indifference claim; and (3) regardless of any violation, that he is entitled to qualified immunity. (*See* Def.'s Not. of Mot. at 2.)

### A. Summary Judgment -- Standard of Review

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 324 (1986). The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations of fact or law. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Instead, the nonmovant must designate which specific facts show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256; *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

Cross-motions for summary judgment do not necessarily mean that there are no disputed issues of material fact, and do not necessarily permit the court to render judgment in favor of one side or the other. *Starsky v. Williams*, 512 F.2d 109, 112 (9th Cir. 1975). Instead, the court must consider each motion separately to determine whether any genuine issue of material fact exists. *Id.* A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The materiality of a fact is thus determined by the substantive law governing the claim or defense. *Anderson*, 477 U.S. at 252; *Celotex*, 477 U.S. at 322; *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Anderson*, 477 U.S. at 248).)

/ / /

/ / /

/ / /

### B.     General Standards for § 1983 liability

Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue; and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 328 (1986); *see Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc).

### C.     Statute of Limitations

Defendant Santiago argues that Plaintiff's Eighth Amendment claims against him are barred by the applicable statute of limitations. (*See* Def.'s Mot. at 13-16.)   While Congress has provided no federal statute of limitations governing section 1983 claims, the Supreme Court has held that federal courts should use the forum state's single most appropriate statute of limitations applicable to personal injury actions for all section 1983 claims. *See Wilson v. Garcia*, 471 U.S. 261, 269 (1985); *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). Relying on *Wilson*, the Ninth Circuit has found that the one-year statute of limitations of California Code of Civil Procedure § 340(3)[3] is the most appropriate. *Usher v. City of Los Angeles*, 828 F.2d 556, 558 (9th Cir. 1987); *Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir. 1995) (per curiam). Federal law, however, determines when a section 1983 cause of action accrues. *Hardin v. Staub*, 490 U.S. 536, 543-44 (1989). Under federal law, a claim generally accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the action." *Elliot v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1996) (internal citations omitted).

Here, Plaintiff claims in his Complaint, and sets forth in his "Statement of Material Facts Not In Dispute, that he was examined by Dr. Santiago on January 9, 1997. (*See* Compl. at 10-11; Pl's. Stmt. Undisputed Facts at 9.) During this examination, Plaintiff claims that he told Dr.

---

[3] California Code of Civil Procedure § 340(3) provided a one-year statute of limitations on any civil action for "[l]ibel, slander, assault, battery, false imprisonment, seduction, injury or death from wrongful act or neglect . . . ." CAL. CIV. PROC. CODE § 340(3). On January 1, 2003, this code section was replaced with § 335.1 which now provides for a two-year statute of limitations on these actions. Plaintiff's claims arose in 1996-1997 prior to the enactment of § 335.1 and therefore, § 335.1 cannot be applied retroactively to Plaintiff's action. *See Maldonado v. Harris*, 370 F.3d. 945 (9th Cir. 2004) (an extension of a statute of limitations will not apply to claims already barred under the prior statute of limitations unless the Legislature explicitly provides otherwise).

Santiago that he needed to be retested for tuberculosis. Moreover, Plaintiff claims that he informed Dr. Santiago that the medications he was being forced to take were causing Plaintiff to become extremely ill. (*See* Compl. at 11.) Plaintiff further claims that "on January 9, 1997, Defendant Santiago disregarded Plaintiff's contentions of illness and request to be retested and continued Plaintiff's INH treatment without retesting him." (*See* Stmt. Undisp. Facts at 9.) Plaintiff's contentions clearly show that his claims against Dr. Santiago arose in 1997. Accordingly, the Court finds that for purposes of the statute of limitations, Plaintiff's cause of action against Defendant Santiago began to accrue in 1997.

Therefore, Plaintiff must have brought this action no later than January of 1998 in order to be within the time permitted by the statute of limitations, unless the statute of limitations was tolled for a period of time. Plaintiff's action is tolled for a period of two years. *See* CAL. CODE CIV. P. § 352.1 (tolling statute of limitations "for a maximum of 2 years" during a prisoner's incarceration); *Fink v. Shedler*, 192 F.3d 911, 916 (9th Cir. 1999) (finding that Plaintiff does not allege any facts to suggest how or why California's one-year statute of limitations might be tolled for a period of time which would make his claims timely.) Pursuant to *Fink*, Plaintiff's claims, accruing in 1997, would be tolled for two years. California's one-year statute of limitations would then begin to run -- requiring Plaintiff to file this action no later than January 2000. However, Plaintiff did not file this action until November 28, 2007, more than seven years later.[4]

Thus, the Court finds that Plaintiff's claims against Defendant Santiago are barred by the statute of limitations and **GRANTS** Defendant's Motion for Summary Judgment on statute of limitations grounds. However, to the extent that Plaintiff claims that he first became aware of potential damage to his liver in 2006, the Court will address Plaintiff's Eighth Amendment claims on the merits as well.

///

///

///

---

[4] Plaintiff initially filed this action in the Eastern District of California on November 28, 2007. The matter was transferred to the Southern District of California on December 11, 2007 [Doc. No. 1].

### D.     Eighth Amendment Deliberate Indifference Claims

In addition, both Plaintiff and Defendant Santiago seek summary judgment in their favor with regard to Plaintiff's Eighth Amendment claims.  The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  This principle "establish[ed] the government's obligation to provide medical care for those whom it is punishing by incarceration." *Id.*  The Supreme Court has noted that "a[n] inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Id.*; *West*, 487 U.S. at 54-55.

Prison officials violate a prisoner's Eighth Amendment right to be free from cruel and unusual punishment if they are deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104.  Thus, the "existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

"In order to show deliberate indifference, an inmate must allege sufficient facts to indicate that prison officials acted with a culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 302 (1991).  The indifference to medical needs also must be substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. *Estelle*, 429 U.S. at 106; *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Here, viewing the evidence presented in the light most favorable to Plaintiff, the Court finds that no genuine issue of material fact exists as to whether Defendant Santiago was deliberately indifferent to Plaintiff's serious medical needs.  In support of his claim that Defendant Santiago was deliberately indifferent to his serious medical needs, Plaintiff supplies

1 a declaration in which he states that he told Dr. Santiago on January 7, 1997 that he needed to
2 be retested because the original testing indicating he was exposed to tuberculosis was invalid.
3 (*See* Pl.'s Decl. in Support of Mtn. for Summ. J. at ¶ 11.) In addition, Plaintiff claims he
4 informed Dr. Santiago that the medication Dr. Santiago prescribed for Plaintiff was causing him
5 "severe headaches, nausea and vomiting." (*Id.*) Plaintiff claims Dr. Santiago "disregarded
6 Plaintiff's contention of illness" and directed Plaintiff to continue to take the medication despite
7 the side effects he was experiencing. (*Id.* at ¶ 12.)

8 Dr. Santiago has submitted a declaration in which he states, while he has no independent
9 recollection of his examination of Plaintiff, he has reviewed Plaintiff's medical records. (*See*
10 Declaration of Laureano Santiago, Jr., M.D. at ¶¶ 5, 8.) Based on his review of the medical
11 records, Defendant Santiago opines that because Plaintiff had "previously tested positive for
12 exposure to tuberculosis and was on the INH treatment at the time he transferred to Calipatria,"
13 there was no medical reason to retest Plaintiff for tuberculosis. (*Id.* at ¶ 8.) Moreover, even if
14 Plaintiff were experiencing side effects from the medication, there was the potential "for the
15 inmate developing a type of tuberculosis that is more resistant and sometimes incurable" if the
16 INH treatment is stopped. (*Id.*) In further support of Defendant's Motion, he has submitted the
17 Declaration of David Hallerstein, M.D., Ph.D., who was "retained by the Office of the Attorney
18 General to offer my medical opinions as to the care and treatment of Bryan E. Ransom" by Dr.
19 Santiago. (*See* Hallerstein Decl. at ¶ 2.)

20 Dr. Hallerstein's Report attached to his Declaration indicates that he has reviewed
21 Plaintiff's Unit Health Record, Plaintiff's administrative grievances, the pleadings filed in this
22 matter and various medical literature. (*Id.*, Ex. "A", Opinions and Data at 1.) Dr. Hallerstein
23 opines that there was "no evidence that Plaintiff was misdiagnosed" and Plaintiff's "TB testing
24 and treatment were consistent with the standard of care." (*Id.*) Plaintiff offers no admissible
25 evidence or expert opinion to contradict Dr. Hallerstein's opinion.

26 Plaintiff also claims that he had a biopsy of his liver in 2006 "for an unrelated illness
27 which indicated that the 1996-1997 INH treatment had damaged Plaintiff's liver." (Compl. at
28 11.) Defendant Santiago argues that Plaintiff has no evidence to support that claim.

Defendant Santiago supplies the expert opinion of Dr. Hallerstein who opines that a review of Plaintiff's medical records indicates that the liver biopsy performed in 2006 "established the presence of inflammation and fibrosis caused by hepatitis C" and there is no reference to INH as a possible cause. (Hallerstein Decl., Opinions and Data at 8.)

Moreover, Dr. Hallerstein opines that even if it were possible for the INH treatment to cause inflammation to the liver, the "inflamation resolves when INH is discontinued." and in this case, INH was discontinued more than nine years prior to Plaintiff's liver biopsy. (*Id.*) According, Dr. Hallerstein opines that "neither the fibrosis nor the inflammation on Plaintiff's 2006 biopsy can reasonably be attributed to his having taken INH." (*Id.* at 9.)

The record before this Court shows that, at best, Plaintiff and Defendant Santiago disagreed on whether Plaintiff should be retested for tuberculosis. It also indicates that Plaintiff and Santiago, disagreed as to whether Plaintiff should continue his course of treatment. In fact, there is expert testimony to indicate that a failure to continue with the course of treatment for tuberculosis, despite the side effects, could have caused Plaintiff far greater harm. There is no evidence in the record to show that Plaintiff's treatment in 1996 and 1997 lead to the discovery of liver issues in his 2006 biopsy. A difference of opinion between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Plaintiff disagrees with the course of treatment ordered by prison medical officials but fails to supply the Court with any affidavits or depositions of medical experts qualified to contradict the appropriateness of the medical treatment he received from Defendant Santiago and has offered nothing more than his own conclusory assertion that the medication should have been discontinued. *See Berg*, 794 F.2d at 459. Therefore, the Court finds that no triable issue of fact exists to show that Defendant Santiago was deliberately indifferent to Plaintiff's medical needs. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Cross-Motion for Summary Judgment as to Plaintiff's Eighth Amendment deliberate indifference to a serious medical need claim. Because the Court has ruled on the merits of Plaintiff's Eighth Amendment deliberate indifference claims, the Court need not

1 address Defendant's arguments that Plaintiff failed to exhaust his administrative remedies
2 pursuant to 42 U.S.C. § 1997e.

### E.     Qualified Immunity

Defendants seek summary judgment on qualified immunity grounds. Because the Court has found no genuine issue of material fact in dispute regarding the alleged violations of Plaintiff's constitutional rights, the Court need not reach any issues regarding qualified immunity. *See County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all."); *see also Saucier v. Katz*, 533 U.S. 194 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

### F.     State Law Claims

Finally, to the extent Plaintiff is seeking to present claims alleging violations of state laws or regulations in the Complaint, the Court declines to exercise supplemental jurisdiction over such claims. "[I]n the usual case in which all federal law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (identifying relevant factors as "judicial economy, convenience, fairness and comity.").)

The Court finds that the instant case presents a situation where the values of "judicial economy, convenience, fairness, and comity" weigh in favor of dismissal without prejudice of Plaintiff's state law claims. Therefore, the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's state law claims and **DISMISSES** any state law claims in the Complaint without prejudice.

26 / / /
27 / / /
28 / / /

## V.

## Conclusion and Order

Based on the foregoing, the Court hereby:

1) **DISMISSES** the action as to Defendants Gray and John Does for failure to serve pursuant to FED.R.CIV.P. 4(m);

2) **GRANTS** Defendant's Motion for Summary Judgment pursuant to FED.R.CIV. P. 56 [Doc. No. 46];

3) **DENIES** Plaintiff's Cross-Motion for Summary Judgment pursuant to FED.R.CIV.P. 56 [Doc. No. 49]; and **DISMISSES** the case.

The Clerk shall enter judgment for Defendants and close the file.

**IT IS SO ORDERED.**

**DATED: April 27, 2010**

                                                        *Irma E. Gonzalez*
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**